# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUAN VICTOR MUNOZ, | : |
| Petitioner | : |
| | : CIVIL ACTION NO. 3:16-2249 |
| v. | : |
| | : (Judge Mannion) |
| DAVID J. EBBERT | : |
| Respondent | : |

## MEMORANDUM

Juan Victor Munoz, an inmate confined in the United States Penitentiary, Lewisburg, Pennsylvania, filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1, petition). He challenges a disciplinary action against him, which occurred while he was incarcerated at the Allenwood United States Penitentiary, White Deer, Pennsylvania (USP-Allenwood). Id. Specifically, he claims that his due process rights were violated "because the Discipline Hearing Officer (DHO) failed to consider his request to preserve and review video surveillance in the unit where the alleged incident occurred" and "because the hearing officer failed to provide him with a written copy of the decision and evidence relied on to support the reasons for the disciplinary actions taken." For relief, he requests the Court "expunge incident report" and "restore all good time

credits." Id. The petition is ripe for disposition and, for the reasons that follow, will be denied.

I.  **Background**

On February 24, 2016 at approximately 8:00 p.m., Incident Report No. 2819696, charging Munoz with fighting with another person, a Code 201 violation and refusing to obey an order of any staff member, a Code 307 violation, was delivered to Munoz by staff member, J. Hart. (Doc. 7-1 at 7, Incident Report). The incident report reads as follows:

> On February 24, 2016, at approximately 2:12 pm this reporting officer witnessed Inmate Munoz, Juan No. 80236-208 and Inmate Serrano, Francisco No. 88785-008 fighting on range 1 by the showers. Inmate Munoz was striking inmate Serrano with closed fists in the upper head and torso area. This officer called for assistance immediately, and then gave a direct order to both inmates to stop fighting. Both inmates refused and kept throwing closed fist punches. Because both inmates were not safe to approach, this officer removed his MK4 Aerosol Dispenser and gave (1) two second burst to the upper and facial area of both inmates. At this time both inmates seized (sic) fighting and were separated. After both inmates were separated, this officer placed inmate Serrano in hand restraints while responding staff restrained inmate Munoz. After inmate Munoz was restrained, he was escorted to Health Services, where he was decontaminated and medically assessed.

Id. On February 28, 2016, Petitioner appeared before the Unit Discipline Committee ("UDC"). (See Doc. 7-1 at 9, Committee Action). Due to the

2

severity of the report, the UDC referred the charge to the Discipline Hearing Officer ("DHO"), recommending loss of good conduct time, and six month loss of visitation and commissary and three month loss of phone privileges. Id. During the UDC hearing, staff member, R. Antonacci informed Munoz of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 10, Inmate Rights at Discipline Hearing).

Also on February 28, 2016, Munoz was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Id. at 11). Munoz requested staff representative, Mr. Passaniti and no witnesses.

On March 4, 2016, Munoz appeared for a hearing before DHO, R. Divers. (Doc. 7-1 at 13-16). Mr. Passaniti appeared on behalf of Munoz. He made the following statement:

> Mr. Passaniti reported that he was asked by Munoz to review the video footage of the event. Mr. Passaniti reported that he did review the video of the event. Mr. Passaniti explains that you can see Munoz in the first shower. You can also see Serrano Francisco #88785-008 waiting in the last shower stall. He observed that once the correctional officer left the area Serrano begins to attack Munoz. You can see the inmates struggling with one another. You can also see Munoz throwing his towel attempting to alert staff. It looks like Munoz was attempting to protect himself. From the angle of the camera it was hard to tell if he was throwing punches or not. In regards to the Charge of Refusing to Obey an Order, Mr. Passaniti reported when staff arrived on scene Munoz, Juan #80236-208 was underneath inmate Serrano, Francisco #88785-008 and did not appear to be

in control of the situation.

Id. Inmate Munoz provided the following statement:

> The report is incorrect. I was hit in the lip and nose as I exited the shower. I immediately started wrestling him. He hit me as I came out of the shower and was drying off. We were wrestling for a couple of minutes. I do not remember if I was fighting back. I was unable to break away so I wrestled him to the stairs so we could be seen.

Id. No procedural issues were cited and no documentary evidence was provided for consideration.

In addition to the Incident Report and Investigation, the DHO also considered Memoranda from seven staff members, photographs, Inmate Injury Assessments for Munoz and Serrano and photographs of evidence photograph - chain of custody bags. Id. The specific evidence relied on to support the findings was as follows:

> During this discipline hearing, the following information was evidentiary and documented by the DHO in his findings. Munoz's involvement in the incident, as noted in Section 11 of Incident Report 2811696, as provided by T. Birdsall, Senior Officer Specialist, was reviewed. Paraphrased, Birdsall writes:
>
> On February 24, 2016 at approximately 2:12 pm, this reporting officer witnessed inmate MUNOZ, Juan NO. 80236-208 and inmate Serrano, Francisco NO. 88785-008 fighting on Range 1 by the showers. Inmate MUNOZ was striking inmate Serrano with closed fists in the upper head and torso area. This officer called for assistance immediately and then gave a direct order to both inmates to stop fighting. Both inmates refused and kept throwing

closed fist punches. Because both inmates were not safe to approach, this officer removed his MK4 Aerosol Dispenser and gave (1) two second bursts to the upper and facial areas of both inmates. At this time, both inmates seized (sic) fighting and were separated. After both inmates were separated, this officer placed inmate Serrano in hand restraints while responding staff restrained inmate MUNOZ. After inmate MUNOZ was restrained, he was escorted to Health Services where he was decontaminated and medically assessed.

Inculpatory evidence in the form of Memorandum from A. Cosentine dated 2-23-16. Lt. Cosentine reports inmates Serrano, Francisco #88785-008 and Munoz, Juan #80236-208 were observed striking each other with punches to the head and upper torso area. A memorandum from P. Newton dated 2-24-16. Lt. Newton reports inmates Serrano, Francisco #88785 and Munoz, Juan # 80236-208 were observed by staff throwing closed fist punches to each other's head and upper torso. A Memorandum from T. Birdsall dated 2-24-16 was also reviewed. T. Birdsall, SO reports observing inmates Serrano, Francisco #88785-008 and Munoz, Juan #80236-208 striking each other with closed fists in the facial and upper torso area. Photographs by J. Hart dated 2-24-16 were also reviewed. Photograph one displays blood inside of the shower stall in Unit 4B lower range, photo two displays blood on the lower range near the showers in Unit 4B, photo three displays blood at the bottom of the stair landing in Unit 4B lower range. Picture number four displays blood outside of the lower range shower Unit 4B, Picture five displays blood on the stall door Unit 4B lower range shower. Picture six displays inmate Munoz #80236-208 with injuries to the nose. Picture seven displays injuries to inmate Munoz right eye and cheek area. Picture eight displays inmate Munoz's hands. Picture nine displays inmate Serrano, Francisco #88785-008 facial area, Picture ten displays injury to Serrano's right chest area with an injury, picture eleven displays Serrano's shorts covered in blood, picture twelve displays Serrano's hands. Also reviewed were Clinical encounters. One for Munoz, Juan #80236-208. RN Waldman, J. Reports decontaminating inmate. RN Waldman also reports

Munoz has a hematoma to the right side of this right eye with bruising present. RN Waldman also reports bleeding out of Munoz's right nares. RN Waldman also notes two lacerations to the lower left side of Munoz's lip. RN Waldman also reported redness to Munoz's chest and back. A Clinical encounter was also reviewed for Serrano, Francisco #88785-008. This encounter was completed by Martinez. A., RN. RN Martinez reports Serrano being decontaminated. RN Martinez also reports Serrano had large amounts of blood covering his shorts and legs. RN Martinez also noted the following injuries a scratch to the right pectoral muscle, a scratch on the left side of neck, and a nick on Serrano's left ear.

Upon questioning by the DHO, Inmate MUNOZ, Registration #80236-208 neither admitted nor denied the charge. He elaborated upon his plea by stating, "The report is incorrect. I was hit in the lip and nose as I exited the shower. I immediately started wrestling him. He hit me as I came out of the shower and was drying off. We were wrestling for a couple of minutes. I do not remember if I was fighting back. I was unable to break away so I wrestled him to the stairs so we could be seen."

After the consideration of evidence documented above, the DHO has drawn the conclusion from the greater weight of the evidence. Although you say that you do not remember fighting back you did report wrestling with him for a couple of minutes. You also reported that you may have fought back. Your staff Representative also reported the following after reviewing the tape. Mr. Passaniti reported that he did review the video of this event. Mr. Passaniti explains that you can see Munoz in the first shower. You can also see Serrano, Francisco #88785-008 waiting in the last shower stall. He observed that once the correctional officer left the area Serrano begins to attack Munoz. You can see the inmates struggling with one another. you can also see Munoz throwing his towel attempting to alert staff. It looks like Munoz was attempting to protect himself. From the angle of the camera it was hard to tell if he was throwing punches or not. Based on your staff representative's report he did observe you and Serrano

6

struggling with one another, he also reported that video was not available for the entire event due to the angle of the camera. Officer Birdsall reports that he observed you striking inmate Serrano, Francisco #88785-008 with closed fists in the upper head and torso area. A memorandum submitted by Lieutenant A. Cosentine also identifies that you were observed in a physical altercation. Specifically both inmates were striking each other with punches to the head and upper torso area. A memorandum submitted by P. Newton, Lieutenant reported that you were observed by staff throwing closed fist punches to each other's head and upper torso. Finally, a clinical encounter conducted by RN Martinez also noted the following injures to Serrano, a scratch to the right pectoral muscle, a scratch on the left side of neck and a nick on his left ear. The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be supported in this case based upon the greater weight of evidence cited in this report as well as the content of the inmate's statement directed toward the staff member. The evidence listed in the paragraphs above, support(s) the finding, inmate MUNOZ, Register no. 80236-208 committed the prohibited acts of Fighting with another person, Code(s) 201 on 2-24-16, at or about 2:12 pm, in SMU, Range 1 at USP Allenwood, PA. The DHO did not find evidence to support your Refusing to obey an order of any staff member based on the report from your staff representative who indicated when staff arrived on scene Munoz, Juan #80236-2008 was underneath inmate Serrano, Francisco #88785-008 and did not appear to be in control of the situation.

Id. The DHO found Munoz guilty of Fighting with Another Person, a Code 201 violation and dropped Refusing to Obey an Order of Any Staff Member, a code 307 violation. The DHO sanctioned Munoz on the Code 201 violation to disallowance of twenty-seven (27) days Good Conduct Time and thirty (30) day loss of phone privilege, all to be served consecutive to like sanctions

previously imposed. Id. The DHO documented his reasons for the sanctions given as follows:

> MUNOZ's involvement in a fight with another inmate potentially threatened not only the safety of the participants, but staff responding to the incident and other inmates in the area. Sometimes what appear to be isolated incidents (a fight in this case) evolve to involve others. With this, disallow 27 days good conduct time is sanctioned in an effort to punish MUNOZ for his behavior, while 30 days loss of phone privileges is used to hopefully deter him from this behavior in the future.

Id. Munoz was advised of his appeal rights at the conclusion of the hearing. Id.

## II. **Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty

interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary

9

proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at

10

least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

    In the instant case it is clear from the record that Munoz was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present

documentary evidence, have a staff representative, and to present witnesses on his behalf. Munoz elected to have an appointed staff representative and Mr. Passaniti was appointed. Petitioner was afforded an opportunity to be present and make a statement at his hearing. He noted no procedural issues and presented no documentary evidence for consideration. Contrary to the allegation in his petition that Munoz never received a copy of the written decision, the Discipline Hearing Officer Report reflects that on March 10, 2016, Munoz was served with a copy of the written decision setting forth the evidence relied upon by the DHO, and the rationale behind the decision, and was notified of his right to appeal.

Since Munoz was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. To the extent Munoz alleges there was not enough evidence to find he had committed the prohibited act, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be upheld if there is "some evidence" to support the decision. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a state prisoner's due process claim. Id. at 456-57; see Thompson v. Owens, 889

F.2d 500, 501- 02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. §541.17(f) (1986) was more stringent than the "some evidence" standard. Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). The Court concluded that the "substantial evidence" standard in §541.17(f) (1986) was "clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings." Id. In 2007, §541.17(f) was amended and no longer includes the "substantial evidence" standard. 28 C.F.R. §541.17(f) (2007). Section 541.17(f) (2007) now requires that a DHO's decision be based on "some facts" and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should not be subject to review where the standard in Hill is satisfied. Id.

In this case, the record clearly reveals extensive documentary evidence

submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. In addition to the statement provided by Petitioner, the DHO also considered the investigative report, staff memoranda, representative statement, photographs and injury assessment reports. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance, there is "some evidence" to support the decision of the DHO. To the extend that Petitioner argues that the DHO violated his due process rights by failing to review the surveillance tape, Petitioner's argument essentially invites us to do what Hill dissuades us from doing, i.e., to go beyond our narrow scope of review to determine if there is "some evidence" supporting the DHO's determination and to go further and to ask whether the DHO failed to consider other evidence or failed to adequately consider allegedly exculpatory evidence. See McKeithan v. Beard, 322 F.App'x 194, 201 (3d Cir. 2009) ("the videotape and photographs at most constitute potentially exculpatory evidence, which prison officials have no constitutional obligation to preserve or consider"). Accordingly, Petitioner has not carried his burden to show entitlement to relief for this claimed violation of his due process rights.

Finally, the Court finds that all sanctions imposed by the DHO were

within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of a 200-level, high severity level prohibited act. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 200-level offenses:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50%, or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 6 months)
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).
- H. Remove from program and/or group activity.
- I. Loss of job
- J. Impound inmate's personal property.
- K. Confiscate contraband.
- L. Restrict to quarters.
- M. Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

## III.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**.  A separate Order will be issued.


                                                    s/ *Malachy E. Mannion*
                                                    **MALACHY E. MANNION**
                                                    **United States District Judge**

**Dated: May 23, 2019**
16-2249-01